UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMECO MACHINE WORKS,

    Plaintiff,

v.

Case No. 13-12919
Hon. Gerald E. Rosen

S&M MACHINERY SALES CORPORATION,

    Defendant.
_____/

**OPINION AND ORDER DENYING
DEFENDANT'S MOTION TO DISMISS**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     March 31, 2014    

PRESENT:  Honorable Gerald E. Rosen
                  Chief Judge, United States District Court

## I. INTRODUCTION

Plaintiff Timeco Machine Works commenced this action in this Court on July 3, 2013, asserting state-law claims of fraud and breach of contract arising out of its purchase of equipment from Defendant S&M Machinery Sales Corporation that allegedly failed to perform to Plaintiff's expectations. Plaintiff previously filed an essentially identical suit against Defendant in a Texas state court and secured a default judgment in its favor, but a Michigan state court granted Defendant's motion to quash this judgment on the ground that the Texas court lacked personal jurisdiction over Defendant. Plaintiff has appealed this Michigan court ruling, but also wishes to pursue its claims in the present suit in the

event that this appeal is unsuccessful. The Court's subject matter jurisdiction rests upon the parties' diverse citizenship. *See* 28 U.S.C. § 1332(a).

By motion filed on August 6, 2013, Defendant now seeks the dismissal of Plaintiff's complaint on two grounds. First, Defendant argues that because this action and the prior Texas suit arise out of the same transaction and involve identical claims, the Court should dismiss this case as an improper effort by Plaintiff to harass Defendant by reasserting claims that are already being litigated in another court. Next, Defendant contends that each of Plaintiff's two claims is barred by the applicable statute of limitations. In response, Plaintiff points to authority recognizing that a federal court may properly exercise jurisdiction over a suit even though proceedings involving the same matter are pending in state court. Plaintiff also takes issue with Defendant's assertions as to which statutes of limitations govern Plaintiff's claims in this case, and it argues that it timely commenced this action in light of certain tolling provisions and savings clauses found in the pertinent Michigan and Texas statutes.

Defendant's motion has been fully briefed by the parties.[1] Having reviewed the parties' briefs in support of and opposition to Defendant's motion, as well as the remainder of the record, the Court finds that the pertinent facts, allegations, and legal issues are adequately presented in these written submissions, and that oral argument

---

[1]Indeed, it is fair to say that this motion has been *more* than fully briefed by the parties, with each side having filed two additional briefs beyond the initial, response, and reply briefs permitted under Local Rule 7.1(d) of this District. Neither party sought leave to make these additional submissions.

would not assist in the resolution of this motion. Accordingly, the Court will decide Defendant's motion "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's rulings on this motion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Timeco Machine Works is a Texas company engaged in the manufacturing business. Defendant S&M Machinery Sales Corporation is a Michigan corporation that sells used manufacturing equipment.

In June of 2007, Plaintiff purchased two pieces of equipment from Defendant at a total purchase price of $132,500.00. (*See* Complaint, Ex. A, 6/28/2007 Invoice.)[2] According to Plaintiff's complaint, the parties' agreement called for Defendant to "ship the equipment in working order and complete with all parts and manuals" to Plaintiff's facility in Texas. (Complaint at ¶ 5.) Plaintiff further alleges that Defendant "represented and guaranteed that the equipment would be fit for its intended purpose and promised that if the equipment received by [Plaintiff] was unsatisfactory, [Plaintiff] would be able to return it for a full refund of the purchase price." (*Id.* at ¶ 6.)[3]

---

[2]Apart from this invoice, there evidently is no written contract between the parties memorializing the terms of their agreement. Instead, the invoice makes reference to a "[v]erbal" arrangement. (*See id.*)

[3]According to Defendant's brief in support of its motion to dismiss, before Plaintiff agreed to purchase the equipment in question, it sent a representative to Defendant's warehouse in Warren, Michigan to inspect and run the machinery. (*See* Defendant's Motion, Br. in Support at 1.) Defendant further asserts that Plaintiff's inspector approved the equipment, after which Plaintiff agreed to purchase it and "arranged to have it picked up by a Texas trucking company it

According to the complaint, Plaintiff fully performed its obligations under the parties' agreement by wiring payment to Defendant in the amount of $132,500.00. Plaintiff alleges, however, that Defendant breached its contractual obligations by delivering equipment to Plaintiff that "was missing essential parts and [shipped] without various product operation manuals, which were required for setting up, testing, and operating the equipment." (Complaint at ¶ 9.)[4] In addition, Defendant allegedly refused to allow the return and full refund that it allegedly promised to Plaintiff in order to induce this Texas company to enter into the transaction. (Complaint at ¶¶ 6, 9.)

Roughly four years later, in June of 2011, Plaintiff brought suit against Defendant in a Texas state court, asserting claims of breach of contract, fraud, and breach of express and implied warranties. (*See* Defendant's Motion, Ex. 2, Texas Complaint.)[5] When Defendant failed to answer the complaint in this Texas suit, a default judgment was entered against Defendant on August 29, 2011 in the amount of $100,075.00. (*See*

---

hired." (*Id.*) As with various other assertions in Defendant's brief, however, these statements are unsupported by any citation to the record, much less to the pleadings that this Court may properly consider in resolving a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6).

[4]Defendant states — again, without citation to the pleadings or any other supporting evidence — that Plaintiff "unjustifiably wanted to cancel only the purchase of" one of the two pieces of equipment shipped by Defendant, a so-called "turning center," but that Defendant refused to allow this partial cancellation. (Defendant's Motion, Br. in Support at 1.)

[5]Although Defendant's motion is accompanied by materials outside the pleadings, including a copy of the Texas complaint and a number of other documents filed in prior court proceedings between the parties, the Court may consider these public records in deciding a motion brought under Fed. R. Civ. P. 12(b)(6). *See New England Health Care Employees Pension Fund v. Ernst & Young, LLP,* 336 F.3d 495, 501 (6th Cir. 2003); *see also Plinton v. County of Summit,* 540 F.3d 459, 461 n.3 (6th Cir. 2008) (taking judicial notice of records of a parallel state court proceeding brought by the same plaintiff and arising from the same incident).

4

Defendant's Motion, Ex. 4, 8/29/2011 Default Judgment.)

On July 16, 2012, Plaintiff filed an affidavit and notice of this Texas judgment in a Michigan state court, seeking to enforce this judgment against Defendant in its home state of Michigan. (*See* Defendant's Motion, Ex. 5, 7/16/2012 Affidavit and Notice of Entry of Foreign Judgment.)[6] Defendant responded by filing a motion to quash the judgment, arguing that the Texas court lacked personal jurisdiction over this Michigan corporation. On February 7, 2013, a Macomb County Circuit Court judge granted Defendant's motion and declared the Texas judgment void for lack of personal jurisdiction. (*See* Defendant's Motion, Ex. 6, 2/7/2013 Opinion and Order at 6.) Plaintiff has appealed this ruling to the Michigan Court of Appeals, and this appeal remains pending.

On July 3, 2013, Plaintiff brought suit in this Court, reasserting against Defendant essentially the same state-law breach of contract and fraud claims that it had pursued in the Texas litigation. Defendant now seeks the dismissal of this suit for lack of subject matter jurisdiction, and as commenced outside the time periods set forth in the applicable statutes of limitations.

### III. ANALYSIS

**A.     The Standards Governing Defendant's Motion**

Defendant states that its present motion is brought under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Under the first of these rules, Defendant seeks the dismissal of Plaintiff's

---

[6]For reasons that are not clear, this affidavit and notice identified the amount of the judgment against Defendant as $200,150.00, twice the amount set forth in the Texas judgment.

complaint for lack of subject matter jurisdiction. In addressing this jurisdictional challenge brought under Rule 12(b)(1), the Court "takes the allegations in the complaint as true," inquiring whether these allegations establish a basis for the exercise of subject matter jurisdiction. *Gentek Building Products, Inc. v. Steel Peel Litigation Trust,* 491 F.3d 320, 330 (6th Cir. 2007).[7] Yet, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice" to withstand a properly supported Rule 12(b)(1) motion to dismiss. *O'Bryan v. Holy See,* 556 F.3d 361, 376 (6th Cir. 2009) (internal quotation marks and citation omitted).

As for Defendant's contention that Plaintiff's complaint should be dismissed as time-barred, Defendant appeals to Rule 12(b)(6) in support of this aspect of its motion, arguing that by virtue of the applicable statutes of limitations, Plaintiff has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion brought under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. *League of United Latin American Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir.

---

[7]The Court views Defendant's motion as mounting a facial rather than a factual challenge to the existence of subject matter jurisdiction. *See Gentek Building Products,* 491 F.3d at 330 (distinguishing between these two types of jurisdictional challenges). As discussed earlier, while Defendant's motion is accompanied by various materials outside the pleadings, these exhibits consist entirely of records of other court proceedings, and the Court may properly take judicial notice of these records. More generally, the parties appear to be largely in agreement about the pertinent facts underlying Defendant's jurisdictional challenge — most notably, that Plaintiff's Texas suit and this case arise out of the same transaction and involve essentially the same claims — so there is no need for the Court to address or resolve any factual disputes in order to rule on this aspect of Defendant's motion.

2007). Yet, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Moreover, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007) (internal quotation marks, alteration, and citations omitted). Rather, to withstand a motion to dismiss, the complaint's factual allegations, accepted as true, "must be enough to raise a right to relief above the speculative level," and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. at 1965, 1974.[8]

**B.     The Parallel Litigation Between the Parties in the Texas and Michigan Courts Does Not Operate to Divest This Court of Subject Matter Jurisdiction over This Suit.**

As its first ground for seeking the dismissal of Plaintiff's complaint, Defendant argues that subject matter jurisdiction is lacking here in light of the parallel litigation

---

[8]As Plaintiff observes in its response to Defendant's motion, the Sixth Circuit has recognized that because "[t]he statute of limitations is an affirmative defense" that a plaintiff need not address or plead around in its complaint, "a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Cataldo v. United States Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). Nonetheless, when the "allegations in the complaint affirmatively show that the claim is time-barred," then "dismissing the claim under Rule 12(b)(6) is appropriate." *Cataldo,* 676 F.3d at 547. The Court returns below to the question whether Defendant's statute of limitations challenge is amenable to resolution on the pleadings alone, or perhaps through consideration of the pleadings along with the other materials in the record of which the Court may take judicial notice.

brought in the Texas and Michigan state courts involving essentially identical claims and the same underlying transaction. The Court need not address this jurisdictional challenge at any length, because it readily agrees with Plaintiff that this argument is wholly lacking in merit.

Defendant's challenge to the Court's subject matter jurisdiction rests on the premise that the courts should take action to protect against "harassment" by litigants who bring multiple suits involving similar claims and the same underlying facts and issues. (*See* Defendant's Motion, Br. in Support at 4.) Be that as it may, the Supreme Court has "repeatedly held that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 292, 125 S. Ct. 1517, 1526-27 (2005) (internal quotation marks and citations omitted). Thus, while "[c]omity or abstention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation," and while "a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment," these various doctrines of abstention and preclusion do not operate to deprive a federal court of its "properly invoked concurrent jurisdiction" to entertain claims that overlap with or are related to matters being addressed in pending state court proceedings. *Exxon Mobil,* 544 U.S. at 292-93, 125 S. Ct. at 1527.

The sole relevant case cited by Defendant on this issue, *First Keystone Consultants, Inc. v. Schlesinger Electrical Contractors, Inc.,* 862 F. Supp.2d 170

(E.D.N.Y. 2012), does not lead to a different conclusion.[9] In that case, the court determined that dismissal in favor of a parallel state court proceeding was appropriate under the abstention doctrine articulated by the Supreme Court in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S. Ct. 1236 (1976). Yet, as indicated in *Exxon Mobil,* 544 U.S. at 292, 125 S. Ct. at 1527, the decision to invoke *Colorado River* or some other abstention doctrine in a given case is not tantamount to a ruling that the court lacks subject matter jurisdiction; rather, it reflects the court's determination to "decline to exercise or postpone the exercise of its jurisdiction," a discretionary authority that stands as "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River,* 424 U.S. at 813, 96 S. Ct. at 1244 (internal quotation marks and citation omitted). In any event, even assuming that *Colorado River* or some other form of abstention were found to be appropriate here — an issue the Court need not and does not decide, in light of Defendant's failure to even broach this subject in its motion — both the Sixth Circuit and this Court have held that a stay, rather than the dismissal sought by Defendant, is the preferred course of action. *See Bates v. Van Buren Township,* No. 03-2258, 122 F. App'x 803, 808-09 (6th Cir. Dec. 6, 2004); *Burke v. Radiant Logistics Global Services, Inc.,* No.

---

[9]Although Defendant also points to a Michigan court decision holding that a state court suit should be dismissed in light of a prior federal suit involving the same parties and claims that remained pending before the federal Court of Appeals, (*see* Defendant's Motion, Br. in Support at 4-5 (discussing *Darin v. Haven,* 175 Mich. App. 144, 437 N.W.2d 349 (1989))), the ruling in that case rested upon the application of a Michigan Court Rule. Here, in contrast, the Court's inquiry into its subject matter jurisdiction is controlled by federal law.

9

08-10581, 2008 WL 2094919, at *4-*5 (E.D. Mich. May 16, 2008).

Indeed, in light of the present procedural posture of the parties' state court litigation, this case would be an especially poor candidate for outright dismissal, as opposed to a stay. As matters now stand, a Michigan circuit court has determined that the judgment obtained by Plaintiff from a Texas court is void for lack of personal jurisdiction over Defendant. If this ruling is upheld on appeal, the result will be that the parties' state court litigation to date will have been set aside for lack of jurisdiction. As Plaintiff observes, the Sixth Circuit has recognized that a dismissal for lack of jurisdiction does not preclude a second suit asserting the same claims. *See Tackett v. M & G Polymers, USA, LLC,* 561 F.3d 478, 486-87 (6th Cir. 2009). Given that Plaintiff would be entitled to bring a second suit once it is finally determined that the judgment in its first suit is void for lack of jurisdiction, and given Defendant's assertion in its present motion that the pertinent statutes of limitations have continued to run despite this initial round of state court litigation, it would appear to be sound litigation strategy for Plaintiff to bring its second suit sooner rather than later, and the courts have reasoned that such a "protective action" can be appropriate under these circumstances. *Exxon Mobil,* 544 U.S. at 294 n.9, 125 S. Ct. at 1527-28 n.9; *cf. Bates,* 122 F. App'x at 809 (finding that "a stay is the best way to effectuate *Colorado River* abstention" because, among other reasons, "it will prevent statute of limitations problems"); *Burke,* 2008 WL 2094919, at *5 ("[A] stay of this case would obviate any statute of limitations concerns attendant to dismissal."). Accordingly, the Court finds that this case is not subject to dismissal for lack of subject

matter jurisdiction.

## C. Defendant Has Failed to Establish That Plaintiff's Claims Are Barred by the Applicable Statutes of Limitations.

Defendant next seeks the dismissal of Plaintiff's complaint on the ground that Plaintiff's claims of breach of contract and fraud are both barred by the statutes of limitations governing these claims. Unfortunately, it is anything but clear from Defendant's motion and accompanying briefs precisely ***which*** statutes of limitations should be applied here, as Defendant advances a different argument with each successive submission to the Court. Upon traversing the many switchbacks in Defendant's position on this subject, the Court finds itself unable to conclude under the present record that Plaintiff's claims are time-barred.

The Court begins its analysis on well-traveled ground. In cases within its diversity jurisdiction, the familiar *Erie* doctrine dictates that this Court must look to the laws of the forum state of Michigan in determining the statutes of limitations that govern Plaintiff's claims. *See Guaranty Trust Co. v. York,* 326 U.S. 99, 110-11, 65 S. Ct. 1464, 1470-71 (1945); *Atkins v. Schmutz Manufacturing Co.,* 372 F.2d 762, 764 (6th Cir. 1967). Yet, this does not necessarily mean, in this case, that the Court need only ascertain the periods of limitation established under Michigan law for claims of breach of contract and fraud, because many states, including Michigan, have enacted borrowing statutes that operate as a "legislative exception from the general rule that the forum always applies its statute of limitation." *Combs v. International Insurance Co.,* 354 F.3d 568, 578 (6th Cir. 2004). In

its initial brief in support of its motion to dismiss, Defendant maintains that Michigan's borrowing statute, Mich. Comp. Laws § 600.5861, should lead this Court to apply the Texas statutes of limitations in determining the timeliness of Plaintiff's claims.

As observed in Plaintiff's response to Defendant's motion, however, Defendant's argument appears to run counter to the language of Michigan's borrowing statute, and certainly runs counter to the position Defendant has taken in its submissions to the Michigan courts challenging the validity of the Texas judgment entered against it. The borrowing statute provides in pertinent part:

> An action based upon a cause of action accruing without this state shall not be commenced after the expiration of the statute of limitations of either this state or the place without this state where the cause of action accrued . . . .

Mich. Comp. Laws § 600.5861. "Under this statute, a cause of action accruing in another state or jurisdiction commenced in Michigan by a nonresident of this state is barred upon expiration of either the applicable Michigan limitation period or the applicable limitation period of the other state or jurisdiction." *CMACO Automotive Systems, Inc. v. Wanxiang America Corp.,* 589 F.3d 235, 243 (6th Cir. 2009) (internal quotation marks, alteration, and citation omitted). "Thus, Michigan's borrowing statute necessarily requires a determination of where and when the action accrued." *CMACO Automotive Systems,* 589 F.3d at 243. Addressing the question of place of accrual, the Michigan Court of Appeals held that "the borrowing statute applies only if an action accrued without any essential fact giving rise to the cause of action occurring in Michigan." *Scherer v. Hellstrom,* 270

Mich. App. 458, 716 N.W.2d 307, 310 (2006).

Considering this standard in light of the facts presented here, the Court agrees with Plaintiff that Michigan's borrowing statute does not apply. As to Plaintiff's breach of contract claim, it can hardly be said that none of the essential facts giving rise to this claim occurred in Michigan. Rather, according to Plaintiff's complaint and the accompanying invoice evidencing the parties' transaction, Plaintiff placed a verbal order for two pieces of equipment with Defendant's office in Michigan, and Defendant shipped this equipment from its Michigan facility to Plaintiff in Texas. In addition, Plaintiff alleges that Defendant made certain promises and representations to Plaintiff in connection with the parties' transaction, and these statements presumably were made by Defendant's representatives at the company's Michigan offices. Likewise, Plaintiff's claim of fraud is based on these same alleged promises and misrepresentations, and the record provides no basis for concluding that these representations were made outside of the state of Michigan. These allegations of significant events occurring in Michigan preclude the application of the borrowing statute here.

Indeed, Defendant argued as much in its submissions to the Michigan courts seeking to quash the Texas judgment, and Plaintiff correctly observes that the doctrine of judicial estoppel forecloses Defendant from advancing an inconsistent position before this Court. Specifically, in a brief filed with the Macomb County Circuit Court, Defendant asserted that "[t]he nexus of the subject transaction is in Michigan, not Texas," (Plaintiff's Response, Ex. 2, Defendant's Suppl. Br. in Support of Motion to Quash

Judgment at 4), and the Michigan circuit court evidently accepted and relied on this argument in holding that "the entire transaction took place in Michigan," (Defendant's Motion, Ex. 6, 2/7/2013 Opinion and Order at 6.)[10] As the Sixth Circuit has explained, "[j]udicial estoppel forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by that same party in an earlier proceeding." *Pennycuff v. Fentress County Board of Education,* 404 F.3d 447, 452 (6th Cir. 2005) (internal quotation marks and citation omitted). Accordingly, to the extent that Defendant argues here that all of the essential facts giving rise to Plaintiff's claims occurred outside the state of Michigan, such that Michigan's borrowing statute applies, the doctrine of judicial estoppel prevents Defendant from taking this position that is flatly inconsistent with the argument successfully and unequivocally asserted by Defendant before the Michigan court.

Apparently conceding the validity of Plaintiff's argument on this point, Defendant makes no further mention of Michigan's borrowing statute in its reply brief in support of its motion, and instead argues that Plaintiff's breach of contract claim is barred by the four-year statute of limitations set forth in Michigan's enactment of the Uniform Commercial Code ("UCC").[11] Specifically, it seems evident that the parties' transaction

---

[10]Again, while these materials are not a part of the pleadings, the Court has explained that it may consider these public records filed in a prior judicial proceeding between the parties while still deciding Defendant's motion under the standards of Rule 12(b)(6).

[11]Notably, Defendant's reply brief is utterly silent as to the statute of limitations that might govern Plaintiff's claim of fraud. Given Defendant's evident recognition that Michigan's borrowing statute does not apply here, there is no longer any basis for Defendant's appeal in its

qualifies as a sale of goods under Article 2 of the UCC, and § 2-725 of the UCC provides that "[a]n action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued." Mich. Comp. Laws § 440.2725(1). Even accepting Plaintiff's contention that its breach of contract claim did not immediately accrue upon the issuance of the June 28, 2007 invoice reflecting the terms of the parties' transaction, but only sometime later upon Defendant's alleged breach of the parties' agreement, (*see* Plaintiff's Response Br. at 11-12), nothing suggests that over two years passed before this breach, such that Plaintiff's July 3, 2013 commencement of this suit could be deemed timely under the UCC's four-year statute of limitations.

Nonetheless, Plaintiff contends — albeit for the first time in a sur-reply brief filed without leave of the Court[12] — that UCC § 2-725 contains a savings clause that granted it an additional six-month period to bring this suit once it was unable to secure the desired relief in the Texas litigation. In particular, § 2-725(3) provides:

---

initial brief to Texas's four-year statute of limitations for fraud claims. (*See* Defendant's Motion, Br. in Support at 6.) Rather, it appears that Plaintiff's claim of fraud is subject to a six-year period of limitation. *See* Mich. Comp. Laws § 600.5813; *see also Executone Business Systems Corp. v. IPC Communications, Inc.,* 177 Mich. App. 660, 442 N.W.2d 755, 760 (1989). Because Defendant has not even argued that Plaintiff commenced the present suit more than six years after its fraud claim accrued, the Court deems Defendant to have abandoned its argument that this claim is time-barred by the applicable statute of limitations.

[12]Ordinarily, the Court might be concerned about the possible unfairness of a party raising an issue after the usual round of briefing is completed, as the opposing party would not be afforded the chance to respond to this new argument. In this case, however, Defendant filed two additional briefs after Plaintiff's sur-reply, and Plaintiff, for its part, filed one more brief. The Court is confident, then, that each side has had ample opportunity to address any issues raised by the other.

> Where an action commenced within [the four-year period specified in] subsection (1) is so terminated as to leave available a remedy by another action for the same breach such other action may be commenced after the expiration of the [four-year period] and within 6 months after the termination of the first action unless the termination resulted from voluntary discontinuance or from dismissal for failure or neglect to prosecute.

Mich. Comp. Laws § 440.2725(3). The courts have recognized that this provision authorizes the commencement of a second breach of contract suit within six months after the first suit arising from this breach is dismissed for lack of jurisdiction. *See, e.g., D. & J. Leasing, Inc. v. Hercules Galion Products, Inc.,* 429 S.W.2d 854, 856 (Ky. 1968). In Plaintiff's view, its first suit against Defendant was "terminated" within the meaning of § 2-725(3) when the Michigan circuit court held on February 7, 2013 that the Texas judgment was void for lack of jurisdiction. Because Plaintiff commenced the present action within six months of this Michigan court ruling, it maintains that this action was timely filed under § 2-725's savings clause.

Defendant offers two arguments against Plaintiff's appeal to the UCC savings clause, but neither is persuasive. First, Defendant points to subsection (4) of § 2-725, which states in pertinent part that "[t]his section does not alter the law on tolling of the statute of limitations." Mich. Comp. Laws § 400.2725(4). According to Defendant, this means that the separate Michigan statute providing for tolling of the statute of limitations, Mich. Comp. Laws § 600.5856,[13] modifies and controls over § 2-725(3). Yet, subsection

---

[13]The parties separately debate in their briefs whether this Michigan tolling statute applies here, with this inquiry largely turning on whether Defendant was properly served under Texas law with a copy of the summons and complaint in Plaintiff's Texas suit. The Court

(3) of § 2-725 is a *savings* clause, not a tolling provision, so the Court does not read subsection (4) as referring to subsection (3), much less dictating that it is supplanted by any non-UCC law relating to tolling. Indeed, it would be implausible to interpret subsection (4) as mandating that the immediately preceding subsection of § 2-725 has no effect in those states (presumably most) that have other laws on the books governing the tolling of the statute of limitations.

Defendant next challenges the notion that Plaintiff's first suit could be deemed "terminated" under § 2-725(3) upon the Michigan court's entry of an order declaring the Texas judgment void for lack of jurisdiction, arguing that the Texas judgment "is still in existence **unterminated**," (Defendant's 9/11/2013 Sur-Reply at 3 (emphasis in original)), and that Plaintiff's contention to the contrary is an "absurdity," (Defendant's 9/19/2013 Response at 2). Notwithstanding these *ipse dixit* assertions, however, and despite the admittedly inelegant fit between the language of § 2-725(3) and the particular procedural developments here, the Court fails to see why the Michigan court's order quashing the Texas judgment could not be characterized as a "termination" of the Texas suit on jurisdictional grounds that "le[ft] available a remedy by another action for the same breach." Mich. Comp. Laws § 440.2725(3). Certainly, if one recognizes that the Michigan court proceedings reflect Plaintiff's effort to enforce its Texas judgment, and that the Michigan court ruling has effectively put an end to this effort, it seems plausible

---

declines to address this issue, in light of its resolution of Defendant's motion on other grounds.

to view the order of the Michigan court as having "terminated" — *i.e.,* brought to an end — the first action in which Plaintiff sought a remedy for Defendant's alleged breach of the parties' agreement.  Indeed, it is difficult to identify any other point or event that could constitute the "termination" of the Texas suit, and Defendant's claim that the Texas judgment remains "unterminated" is belied by the facts that the judgment has been declared void (at Defendant's request) and that Plaintiff can no longer enforce it.

At a minimum, Defendant has not identified any authority that militates against the application of § 2-725(3) under the circumstances presented here.  Nor do Defendant's conclusory assertions, unaccompanied by any sort of developed argument, carry the day on this point.  Accordingly, the Court finds nothing in the pleadings or elsewhere in the limited record that would foreclose as a matter of law Plaintiff's appeal to the savings clause of § 2-725 as authorizing the commencement of this suit.

## IV. **CONCLUSION**

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's August 6, 2013 motion to dismiss (docket #5) is DENIED.

                        s/Gerald E. Rosen
                        Chief Judge, United States District Court

Dated: March 31, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 31, 2014, by electronic and/or ordinary mail.

                        s/Julie Owens
                        Case Manager, (313) 234-5135